IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| LANCE CONWAY WOOD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV-04-99-C-BLW |
| | ) | |
| vs. | ) | **MEMORANDUM ORDER** |
| | ) | |
| IDAHO DEPARTMENT OF | ) | |
| CORRECTIONS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pending before the Court is Plaintiff Wood's Motion to Reconsider (Docket No. 163). Also pending is IDOC Defendants' Amended Motion to Dismiss Second Amended Complaint (Docket No. 165), which supersedes and renders moot their Motion to Dismiss (Docket No. 146); IDOC Defendants' Motion to Strike Declarations in Support of Plaintiff's Response to Motion to Dismiss (Docket No. 172); and IDOC Defendants' Motion to Take Plaintiff's Deposition (Docket No. 173). Having reviewed the record, and having considered the parties' written arguments, the Court enters the following Order.

## BACKGROUND

Previously in this case, the Court granted summary judgment on a number of Plaintiff's medical claims (Docket No. 139). All of Plaintiff's claims against the IDOC remain except the claims regarding Hepatitis vaccinations, which were disposed of by the

MEMORANDUM ORDER - 1

previous Order granting summary judgment.  The Court will address only the claims against the IDOC Defendants in this Order, and will address later, by separate order, Plaintiff's remaining claims against PHS, Inc.

## PLAINTIFF'S MOTION TO RECONSIDER

Plaintiff requests that the Court reconsider its earlier decision to require Plaintiff to proceed pro se instead of appointing another attorney after his first attorney, Bruce Owens, requested that he be allowed to withdraw from the case.  Plaintiff should be aware that there are very few pro bono attorneys with expertise in prisoner civil rights litigation, and especially in the nature of Plaintiff's case.  Attorneys who are not comfortable handling civil rights cases or representing prisoners are allowed to withdraw from pro bono cases.  In addition, this Court did not appoint Bruce Owens for the purpose of "convin[cing] Mr. Wood to take his case to the state courts," as Plaintiff alleges.

After the Court issued its Order, it requested that a second attorney accept representation in this case, but the attorney declined.  The Court is awaiting a response from a third attorney.  At this point, in order to avoid any further delay, the Court will require Plaintiff to proceed pro se, as he began this case.  The Court will appoint counsel if counsel can be found.

Plaintiff is one of the more skilled inmate litigants that the Court has encountered, and he has had little difficulty in representing himself.  The Court has ordered that any discovery responses that implicate security or confidentiality issues could be lodged directly with the Court, rather than with Plaintiff.  The Court also clarifies that Plaintiff

may proceed with reasonable discovery in this case regarding those claims that remain. Because Plaintiff is fully capable of pursuing this action, and because the Court has other reasonable safeguards in place to protect his interests at this time, the Court will deny the Motion to Reconsider (Docket No. 163).

## IDOC'S MOTION TO DISMISS

### A.    Introduction

Plaintiff is currently proceeding on his Second Amended Complaint (Docket No. 13).  Defendants concede that Plaintiff has exhausted his claim that Defendant Kent Shriver was deliberately indifferent to his iritis condition.  However, they argue that Plaintiff has failed to exhaust his administrative remedies regarding his other claims.  The Court uses as its guide to Plaintiff's causes of action and the remaining defendants the outline it relied upon in its Order of March 30, 2005, pp. 2-3 (Docket No. 139).

The Idaho Department of Correction (IDOC) administrative exhaustion procedures require a prisoner to first file an Inmate Concern Form to try to informally resolve his problem.  Second, he must file a Grievance.  Third, he must file an appeal of the Grievance within 10 days of the response, which are handled by the warden of the facility.  *See Affidavit of Loy Mechling* (Docket No. 146).

The IDOC Grievance Directive allows a plaintiff to complain of a policy *or* complain of an individual's actions, and requires the names of the personnel involved to be listed in the Grievance.  *See Grievance Directive No. 316.02.01.01 attached to Affidavit of Debbie Walker*, at pp. 2-3, 5 (as numbered in Directive) (Docket No. 146-3).

MEMORANDUM ORDER - 3

**B.**    **Standard of Law**

A prisoner is required to exhaust all of his administrative remedies within the prison system before he can bring a civil rights lawsuit challenging the conditions of his confinement.  42 U.S.C. § 1997e(a).  Exhaustion must occur prior to filing suit; a prisoner may not exhaust his administrative remedies during the course of a civil rights action. *McKinney v. Carey*, 311 F.3d 1198, 1199-2101 (9th Cir. 2002).

Failure to exhaust remedies is an affirmative defense that must be brought as an unenumerated 12(b) motion, *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003).[1] Defendants bear the burden of proving (1) failure to exhaust, and (2) that further administrative remedies are available to the plaintiff. *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2005).

Administrative exhaustion requires an inmate to complete all avenues of administrative appeal open to him.  *Ngo v. Woodford*, 403 F.3d 620, 630 (9th Cir. 2005).[2] Administrative remedies are deemed exhausted so long as the prisoner files an appeal; whether the appeal is accepted or rejected by the prison does not render the claim unexhausted.  *Id*.  For example, in *Ngo*, the inmate filed an appeal, but it was deemed untimely and the merits of the appeal not considered.  *Id*. at 630.  The court held that Ngo had exhausted his administrative remedies and could proceed to federal court because

---

[1]  In deciding a motion to dismiss for failure to exhaust administrative remedies, a court may look beyond the pleadings and decide disputed issues of fact.  *Wyatt*, 315 F.3d at 1119-20.

[2]  The United States Supreme Court has granted a writ of certiorari in *Ngo*, at 74 U.S.L.W. 3301 (Nov. 14, 2005).

there were no avenues of administrative review open to him at the prison.  *Id*.  Thus, where an inmate's administrative appeal is denied on state procedural grounds, the exhaustion requirement of § 1997e(a) is satisfied.  *Id*.

Section 1997e(a) requires prisoners to exhaust only those administrative remedies "available" to them.   Thus, where a prisoner files an appropriate grievance but prison officials fail to respond within the prison's self-imposed time limit, further administrative remedies are considered unavailable and, hence, exhausted.  *Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir. 1998).  Where a prison grievance procedure does not require identification of specific individuals who caused the alleged constitutional violation, but asks only that an inmate describe the problem and declare the remedy requested, administrative remedies are deemed exhausted as to the claims against all individuals named in the complaint.  *Butler v. Adams*, 397 F.3d 1181, 1183 (9th Cir. 2005).

In *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2005), the Court decided consolidated cases of two inmates, Brown and Hall, and held that an inmate need not exhaust further levels of review once he has either been (1) granted relief and "received all 'available' remedies at an intermediate level of review" or (2) "reliably informed by an administrator that no remedies are available."  *Id*. at 935.

Inmate Brown filed an initial grievance, which was denied; he then filed a second level appeal.  *Id*. at 931-32.  The second level appeal response was: "Your appeal is partially granted at the second level of review, in that your appeal will be investigated by the Office of Internal Affairs, at which time you will be personally interviewed."  *Id*. at

MEMORANDUM ORDER - 5

937.  The Ninth Circuit noted, "The memorandum did not counsel that any further review

was available."  *Id*.  The court then reasoned:

> Even read in isolation, the reasonable import of this memoranda is
> that no further relief will be available through the appeals process, but the
> confidential staff complaint investigation would go forward and could result
> in some administrative action based on Brown's complaint.  That Brown
> could reasonably have so understood the communications to him is itself a
> strong indication that no further relief was "available" other than the staff
> complaint investigation and (confidential) result.

*Id*. at 937-38.  The Ninth Circuit reached this result despite the fact that the prison system

had a third-level appeal that was never utilized in Brown's instance.

As for inmate Hall in the consolidated *Brown* case, the court distinguished the

facts as follows, concluding that Hall did *not* exhaust his administrative remedies.  He

filed an initial grievance, which was denied.  He then filed a second level grievance, and

was informed that an internal investigation was proceeding and that he *did* need to further

appeal other issues not covered by the investigation, such as property or disciplinary

issues separately.  Hall failed to wait for the investigation to be resolved before filing suit,

and he filed no third-level appeal on his other issues.  The Ninth Circuit noted that an

inmate may not exhaust his grievances after filing suit, but must do so before.  *Id*. at 942.

In *Panaro v. City of North Las Vegas*, 432 F.3d 949, 2005 WL 3470273 (9th Cir.

2005), Panaro was a pretrial detainee at a detention center.  He alleged that officers

refused to give him a towel, and then beat him up and stuffed grievance forms down his

shirt when he asked for a grievance form to complain about the towel situation.  2005 WL

3470273,  at *1.  Panaro was later disciplined for his part in the altercation with the

MEMORANDUM ORDER - 6

officers and informed of his right to appeal the decision.  He did not appeal the decision, nor did he ever file a grievance regarding the towel or beating incidents.  However, Panaro "participat[ed] in an internal affairs investigation against one of the officers by submitting to a recorded interview"; the officer was later disciplined for his role in the incident.  *Id.*  On these facts, the Ninth Circuit court held that Panaro did not constructively exhaust his administrative remedies by participating in the internal affairs investigation of the officer's conduct, deeming it critical that Panaro never even *initiated* the grievance procedure and that *no* remedies were available to Panaro through the internal investigation procedures.  *Id.* at *3.

Where a court determines (1) that a civil rights complaint contains both exhausted and unexhausted claims, and (2) that "the unexhausted claims are not intertwined with the properly exhausted claims," the court should dismiss the unexhausted claims and allow the inmate to proceed on the exhausted claims.  *Lira v. Herrera*, 427 F.3d 1164, 1175 (9th Cir. 2005).  "On the other hand, when a plaintiff's 'mixed' complaint includes exhausted and unexhausted claims that are closely related and difficult to untangle, dismissal of the defective complaint with leave to amend to allege only fully exhausted claims is the proper approach."  *Id.* at 1176.

If the court concludes that the prisoner has failed to exhaust administrative remedies and further remedies are available to him, the proper remedy is dismissal

MEMORANDUM ORDER - 7

without prejudice.[3]  *Id*.  If there are no further remedies available because his late-filed

grievance was rejected as untimely, his remedies are deemed exhausted, and he may

proceed with his suit.  *Ngo*, 403 F.3d at 625.

**C.   Discussion**

    1.   <u>Claim Regarding Interference with Medical Care</u>

Plaintiff filed an Inmate Concern Form (ICF) on June 26, 2003, regarding the

confiscation of his sunglasses sent to him by his family.  Dr. Hill, a medical doctor, had

authorized the sunglasses because he was not aware of the security regulation that

prohibited such shipments from unauthorized sources outside the institution.  Plaintiff

sent the ICF to Warden Foster, but it was answered by Defendant Shriver.  The response

was that the warden has the ability to override medical decisions, and that, upon approval,

Plaintiff would be authorized glasses from Dr. Lundgren, the optometrist, and provided

the glasses by the medical department.  *See Exhibit A to Second Amended Complaint*.

Plaintiff filed a Grievance on the same issue on June 30, 2003.  He noted in the

Grievance that he had sent an ICF to Warden Foster that had been answered by Shriver.

The Grievance was answered by Defendant Thomason.  *See id.*  Prior to her response,

Thomason had interviewed Plaintiff to familiarize herself with the issue.[4]  *See Exhibit C*

---

    [3] The statue of limitations is tolled while an inmate completes a mandatory
administrative exhaustion process.  *Brown*, 422 F.3d at 942-43.

    [4] In addition, on July 7, 2003, Plaintiff sent an ICF to Lieutenant Thomason, asking why
she, a lieutenant, had answered his Grievance regarding his eyewear when a captain had
answered the ICF.  "Does the system now work backwards?", he asked*.  See Exhibit C to Second
Amended Complaint*.  This ICF shows that Plaintiff was trying to understand how the Grievance

MEMORANDUM ORDER - 8

*to Second Amended Complaint*. The Grievance was denied, and the Appeal was denied by Warden Phil Foster.  Accordingly, the claim for interference with medical care regarding the confiscation of sunglasses is exhausted as to Shriver, Thomason, and Foster.  As to Thomason, Defendants cannot select an official to answer an ICF or Grievance who is different from the official named in the ICF or Grievance and then later argue that the inmate did not exhaust his remedies as to all of the officials involved in the ICF or Grievance.

When Plaintiff saw the optometrist, Dr. Lungren, he was not authorized to have sunglasses; rather, Dr. Lungren authorized a low tint on his regular glasses.  Plaintiff grieved this decision, wondering whether prison officials were overriding Dr. Lungren's medical opinion.  Plaintiff filed an ICF addressed to Dr. Lungren, on June 26, 2003.  Linda Gehrke, the Clinical Supervisor, responded to the ICF.  Plaintiff then filed a Grievance on July 15, 2003.  Linda Gehrke responded to the Grievance.  Debi Titus denied the Grievance, and Phil Foster affirmed the decision on appeal.  *See Exhibit B to Plaintiff's Second Amended Complaint* (Docket No. 13).  This additional Grievance shows that Plaintiff has exhausted his administrative remedies as to this medical issue regarding Defendant Foster.

Plaintiff again attempted to resolve this issue by filing an ICF with Nurse Whipple on July 19, 2003.  It was answered by Debi Titus, stating, "Mr. Wood, [t]his issue has be[en] grieved and you have appealed to the Warden."  *See Exhibit D to Plaintiff's*

---

system was practically implemented at ICI-O.

*Second Amended Complaint*.  This response is evidence that Plaintiff did, in fact, exhaust his remedies on his interference with eye care claims.

Plaintiff also alleges in his Complaint that Defendants MacEachern, Aldren, and Lahie violated his Eighth Amendment rights by delaying treatment.  There is no indication that Plaintiff filed an ICF regarding the actions of MacEachern, Allen, Martin, Aldren, and Lahie as to this claim.  Therefore, his medical claims against these Defendants are unexhausted and dismissed without prejudice.

      2.    <u>Plaintiff's Claims against IDOC Defendants re: Sexual Misconduct of Sandra Martin and Failure to Correct Martin's Misconduct</u>

Plaintiff began the first step in exhausting his administrative remedies by filing an ICF complaining of Defendant Martin's conduct on July 20, 2003.  IDOC chose to respond to that Inmate Concern Form by conducting various investigations, rather than responding through the ICF/Grievance system.  Therefore, Plaintiff had no obligation to continue with the ICF/Grievance system once Defendants selected another method to handle his ICF.  Unlike the inmate in *Panaro*, who never filed an ICF, Plaintiff did, in fact, begin in the correct manner with an ICF.

Plaintiff alleges that investigatory work on the sexual misconduct claim was conducted by Defendants Thomason, Wolf, Yordy, and Atencio.  The Court rejects Defendants' position that because the investigation was conducted by the Office of Professional Standards of the Idaho State Police, rather than the IDOC, Plaintiff has not exhausted his administrative remedies.  Defendants' argument first fails because

MEMORANDUM ORDER - 10

Thomason, Wolf, and Atencio, who are IDOC employees, conducted part of the investigation in response to the ICF.  In addition, inmates should not have to discern who is responding to their ICF in trying to determine if they have exhausted their administrative remedies.  If IDOC chooses to hand over the investigation of an ICF (not simply a staff complaint) to another agency within the State, that should not have a negative impact on the inmate's efforts to pursue his administrative remedies.  Here, it is IDOC, not the inmate, who determined that the Inmate Concern Form should take a different course from the regular grievance procedure.  Defendant Yordy's alleged instruction to Plaintiff that he was not to talk to anyone about the issues concerning Martin, and that "that order came from Beauclair," is enough to lead an inmate to assume that he should not file further grievances about the issue.  Defendant Thomason also instructed Plaintiff not to discuss the issue with inmates or staff except the staff assigned to the investigation.  *See Exhibit S to Second Amended Complaint; see Declaration of Plaintiff*, Attachment 2, p. 34 (Docket No. 169).

Based on the foregoing, the Court concludes that Plaintiff has exhausted his remedies concerning Defendants Foster, Yordy, Wolf, and Thomason on the issue of Martin's sexual misconduct or her supervisors failing to remedy the situation.  Plaintiff has not exhausted his remedies on this claim as to Defendants MacEachern, Allen, Shriver, Aldren, or Lahie.

3.    Retaliatory Transfer

Plaintiff asserts that Defendants moved him from ICI-O to ISCI in retaliation for

MEMORANDUM ORDER - 11

reporting the Martin incident and not giving prison officials his evidence relevant to the incident.  Plaintiff filed an ICF on August 17, 2003, addressed to Warden Foster asking to know why he was transferred from ICI-O to ISCI.  *See Exhibit I to Second Amended Complaint*.  It does not appear that Warden Foster answered the ICF.[5]  Therefore, the Court will consider Plaintiff's remedies exhausted as to this claim regarding Warden Foster.  *See Ngo*, 403 F.3d at 630; *Underwood*, 151 F.3d at 295. However, Plaintiff's ICF did not mention the actions of Defendants Yordy, Wolf, Thomason, and Atencio. Therefore, the retaliation claim against them is dismissed without prejudice.

    4.   <u>Confiscation of Evidence</u>

Plaintiff alleges that some of the evidence for this case was confiscated from his cell by IDOC officials.  On February 3, 2004, Plaintiff sent an ICF to Defendant Atencio regarding confiscation of his items.  Atencio responded that, "[p]ursuant to Policy 227, the OPS is required to investigate allegations of Staff misconduct. The items that were taken from your cell may assist in bringing closure to this matter."  *Exhibit M to Second Amended Complaint*.  On the same day, he sent a similar ICF to "Defendant Wolf/Administration/Investigation."  *See id.*  Wolf's response was similar to Atencio's response.

It appears that Plaintiff filed Grievances on these ICFs on February 20, 2004.  *See*

---

[5]Defendants reference Plaintiff's ICF filed on October 7, 2003, asking why he was *not* moved to ICC as requested, which was answered by Sergeant Dorsey.  *See Exhibit C(c) to Second Amended Complaint*.  This is not the same issue as Plaintiff's current claim, and is not a part of Plaintiff's Second Amended Complaint.

MEMORANDUM ORDER - 12

*Exhibit Q to Declaration of Plaintiff* (Docket No. 169).[6]  On February 24, 2004, Gloria

Counsil, the ISCI Grievance Counselor, sent Mr. Wood a memo stating that his Grievance

was being returned without action being taken for the following reason: "Mr. Wood, you

sent in four grievances[;] you are only allowed to have three grievances at one time.

Besides from what I have read all the grievances are talking about the same issue." *See*

*Exhibit K(k) to Second Amended Complaint*.  Based upon all of the foregoing, the Court

concludes that Plaintiff did all he could to exhaust his administrative remedies on the

issue of confiscation of his evidence, and Defendants chose not to respond, or treated

their response to his first Grievance as applicable to his last Grievance.  *See Ngo*, 403

F.3d at 630; *Underwood*, 151 F.3d at 295.  This claim will be considered exhausted as to

Defendants Yordy, Atencio, and Wolf.  The claim is not exhausted as to Defendant

Thomason.

     5.   <u>Conclusion</u>

     Plaintiff may not proceed on the following claims for failure to exhaust

administrative remedies: (1) interference with eye care against Defendant MacEachern,

Allen, Aldren, Martin, and Lahie; (2) retaliatory transfer against Defendants Yordy, Wolf,

Thomason, and Atencio; (3) failure to prevent or remedy Martin's sexual misconduct

against Allen, Shriver, Aldren, and Lahie; and (4) confiscation of legal evidence against

---

     [6]  Plaintiff also had previously filed ICFs and Grievances as to the search of his cell
against State employees Lee and Rowell, but they are not parties to this action.  These
Grievances are relevant to the extent that Gloria Counsil refused to accept further Grievances
against Defendants Atencio and Wolf because she considered the subject matter of the
Grievances the same.  *See Exhibit K(k) to Second Amended Complaint.*

MEMORANDUM ORDER - 13

Thomason.

These Defendants have never had an opportunity to try to resolve Plaintiff's claims in the administrative remedy context, and exhaustion is required *prior* to the filing of a lawsuit.  Plaintiff's claims against these Defendants are unlike the situation in *Butler v. Adams*, where (1) the plaintiff was complaining of a general policy problem, rather than the actions of individuals, and (2) the grievance system did not require the inmate to specify the individual officers who allegedly violated his rights.  Here, the IDOC Grievance Directive allows a plaintiff to complain of a policy *or* complain of an individual's actions, and requires an inmate to specify the names of the personnel involved.[7]  Plaintiff, here, complained about the policy to Warden Foster, and, therefore, his policy cause of action is preserved; however, he was required to complaint about each individual's actions in exhausting his administrative remedies in order to sue them in their individual capacities.

Defendants do not state that the remedies are unavailable; therefore, the Court assumes that they are still available.[8]  These claims shall be dismissed without prejudice.

---

[7] *See Grievance Directive No. 316.02.01.01 attached to Affidavit of Debbie Walker*, at pp. 2-3, 5 (as numbered in Directive) (Docket No. 146-3).

[8] Also lacking in this case is any clear indication that, in the year after Plaintiff reported his allegations of misconduct, Defendants ever completed their investigation of the sexual misconduct allegations against Martin and reported the conclusion to Plaintiff.  *See Brown v. Valoff*, 422 F.3d at 943 (Hall plaintiff) (failure to await the outcome of an investigation is failure to exhaust administrative remedies).  In this context, Plaintiff waited from July 2003, when he filed his ICF, to February 27, 2004, when he filed his Complaint.  The Court finds this a sufficient length of time in which Plaintiff could have concluded that no communication or conclusion about the investigation would ever be forthcoming, especially given the relatively short time periods reserved for resolution of inmate grievances.

MEMORANDUM ORDER - 14

The Court notes that there is no indication that there is any available Grievance procedure as to an inmate's claims against Thomas Beauclair, and therefore, those claims remain.  However, Plaintiff will have to show Beauclair's personal participation in the alleged civil rights violations in order to survive summary judgment.

## MOTION TO TAKE DEPOSITION

The IDOC Defendants wish to take Plaintiff's deposition.  They assert that the deposition is essential to the defense of their case.  Good cause appearing, the Motion shall be granted.

The parties and counsel shall be professional and courteous to one another during the deposition.  The court reporter, who is not a representative of Defendants, will be present to record all of the words spoken by Plaintiff, counsel, and any other persons at the deposition.  If Plaintiff wishes to ensure that the court reporter did not make mistakes in transcribing the deposition into a written form, then he can request the opportunity to read and sign the deposition, noting any discrepancies between what is transcribed and what he believes he said.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

A.     Plaintiff Wood's Motion to Reconsider (Docket No. 163) is DENIED.

B.     IDOC Defendants' Amended Motion to Dismiss Second Amended Complaint (Docket No. 165) is DENIED in part, and GRANTED in part as to  claims of (1) interference with eye care against Defendant MacEachern,

Allen, Aldren, Martin, and Lahie; (2) retaliatory transfer against Defendants Yordy, Wolf, Thomason, and Atencio; (3) failure to prevent or remedy Martin's sexual misconduct against Allen, Shriver, Aldren, and Lahie; and (4) confiscation of legal evidence against Thomason.

C.    IDOC's Motion to Dismiss (Docket No. 146), which was superceded by Docket No. 165, is MOOT.

D.    IDOC's Motion to Take Plaintiff's Deposition (Docket No. 173) is GRANTED.

E.    IDOC Defendants' Motion to Strike Declarations in Support of Plaintiff's Response to Motion to Dismiss (Docket No. 172) is DENIED.  Defendants are correct that the subject matter is irrelevant to the Motion to Dismiss, but the Court will allow the Declarations to stand so that Plaintiff may refer to them in support of any response to a motion for summary judgment filed by Defendants, if necessary.  Plaintiff shall cease filing duplicate exhibits, and instead direct attention to exhibits already in the record by reference only.

DATED:  **March 16, 2006**

B. LYNN WINMILL
Chief Judge
United States District Court

MEMORANDUM ORDER - 16