IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| LANCE CONWAY WOOD, | ) | Case No. CV 04-99-C-BLW |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM DECISION** |
| vs. | ) | **AND ORDER** |
| | ) | |
| IDAHO DEPARTMENT OF | ) | |
| CORRECTIONS, et. al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

Currently pending before the Court are Defendants' Motion for Summary

Judgment on Counts II, III, V, and VII (Docket No. 279) and Defendants' unopposed

Motion to Extend Page Limit (Docket No. 286).  Having fully reviewed the record, the

Court finds that the parties have adequately presented the facts and legal arguments in the

briefs and record and that the decisional process would not be significantly aided by oral

argument.  Therefore, in the interest of avoiding further delay, the Court shall decide this

matter on the written motions, briefs and record without oral argument.  D. Idaho L. Civ.

R. 7.1(d).  Accordingly, the Court enters the following Order granting the Motion to

Extend Page Limit and granting in part and denying in part the Motion for Summary

Judgment.

**INTRODUCTION**

Plaintiff Lance Conway Wood, an inmate in the custody of the Idaho Department of Corrections (IDOC), filed a civil rights Complaint alleging, among other related claims, that Defendants had provided improper medical care for his eye, that Defendant Correctional Officer Sandra Martin had sexually harassed and abused him, and that supervising Defendants failed to protect him from Ms. Martin's alleged sexual harassment and abuse.  (Second Amended Complaint, Docket No. 13.)  On March 27, 2008, this Court entered a Memorandum Order (Docket No. 252) granting IDOC Defendants' Motion for Partial Summary Judgment and dismissing several of Mr. Wood's claims. Remaining were Count II, an Eighth Amendment claim against Ms. Martin; Count III, a Fourth Amendment claim against Ms. Martin; Count V, an Eighth Amendment claim against IDOC Defendants Tom Beauclair, Keith Yordy, Phil Foster, LaWanda Thomason; and Count VII, a First Amendment claim that LaWanda Thomason wrongfully confiscated inmate witness statements in retaliation for Plaintiff filing departmental concerns and grievances.[1]  Defendants now argue that they are entitled to summary judgment on all remaining claims.

---

[1] The partial motion for summary judgment was dismissed without prejudice with respect to Count V and the claim against Ms. Thomason in Count VII (Docket No. 252).

MEMORANDUM DECISION AND ORDER - 2

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**Legal Standard Governing Summary Judgment**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those which may affect the outcome of the case. *See id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

MEMORANDUM DECISION AND ORDER - 3

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case.  *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor.  *Id.* at 256-57.  The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists.  *Celotex,* 477 U.S. at 324.

Only admissible evidence may be considered in ruling on a motion for summary judgment.  *Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir.2002); *see also* Fed.R.Civ.P. 56(e).  In determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered.  *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003).  If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay.  *Id*. (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony of contents would not be hearsay).

Statements in a brief, unsupported by the record, cannot be used to create an issue

MEMORANDUM DECISION AND ORDER - 4

of fact. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). The Circuit "has repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir.1988).  Authentication, required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit.  *Id.*  The affidavit must contain testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document.  *Id.*

**Count II - Eighth Amendment Claim Against Sandra Martin**

Mr. Wood's Second Amended Complaint alleges that Ms. Martin sexually harassed and abused him, violating his Eight Amendment right to be free from cruel and unusual punishment.  Specifically, Mr. Wood's Eighth Amendment violation claim rests on the following incidents: (1) Ms. Martin allegedly placed her hand on his groin area; (2) Ms. Martin allegedly came into Mr. Wood's cell, ordered him against the wall and reached in his gym shorts to manually stroke his penis; and (3) Ms. Martin performed a series of "aggressive" and "vindictive" pat searches that included her sexually groping his groin area (Plaintiff's Response, Docket No. 284, p. 3.)  The Court will address each of these allegations in turn.

The Eighth Amendment prohibits correctional officers from unnecessarily, wantonly, and gratuitously inflicting pain on inmates.  Prisoners have an Eighth Amendment right to be free from sexual abuse.  *Schwenk v. Hartford*, 204 F.3d 1187,

MEMORANDUM DECISION AND ORDER - 5

1197 (9ᵗʰ Cir. 2000) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Felix v.*

*McCarthy*, 939 F.2d 699, 702 (9th Cir.1991); *Farmer v. Brennan*, 511 U.S. 825, 834

(1994); *Mathie v. Fries*, 935 F.Supp. 1284, 1301 (E.D.N.Y.1996); and *Women Prisoners*

*of the Dist. of Columbia Dept. of Corrections*, 968 F.Supp. 744, 745 (D.D.C.1997)).

There is no question that sexual abuse is conduct which is "inconsistent with

contemporary standards of decency" and "repugnant to the conscience of mankind," and

therefore violates the Eighth Amendment.  *See Whitley v. Albers*, 475 U.S. 312, 327

(1986) (internal citations omitted).

In order to rise to the level of an Eighth Amendment violation correctional officers

must subject inmates to "uninvited sexual contact that is done maliciously and sadistically

to cause harm and that does not advance any legitimate security interest." *Bromell v.*

*Idaho Dept. Of Corrections*, 2006 WL 3197157 (D. Idaho 2006).  More specifically, the

Plaintiff must prove: (1) the conduct was sufficiently harmful, *i.e.*, inconsistent with

contemporary standards of decency; and (2) the officer acted maliciously and sadistically

for the very purpose of causing harm. *Id.*  Verbal sexual harassment can constitute an

Eighth Amendment claim if the resulting harm was sufficiently severe.  *See Freitas v.*

*Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997).  However, "welcome and voluntary sexual

interactions, no matter how inappropriate, cannot as a matter of law constitute "pain" as

contemplated by the Eighth Amendment." *Id.* at 1339.

First Incident

Defendants argue that Mr. Wood's allegations regarding Ms. Martin touching his

MEMORANDUM DECISION AND ORDER - 6

groin do not rise to the level of an Eighth Amendment violation because the incident

occurred in the context of a consensual sexual relationship between Ms. Martin and Mr.

Wood.  (Defendants' Memo, Docket No. 279-14, p. 10.) Plaintiff alleges that this incident

occurred after the consensual relationship had ended and, as such, it was uninvited sexual

contact.  (Response, Docket No. 284, p. 3.)  Mr. Wood further argues that the unwanted

nature of the contact is evidenced by Mr. Wood's deposition testimony, that he "literally

pushed her away."  (*Id. citing* Wood Deposition Transcript at 55:17-20, Docket No. 279-

9.)

        However, Mr. Wood's deposition testimony makes it clear that the relationship

had not yet ended.  According to Mr. Wood's own testimony, he was trying to determine

whether Ms. Martin was married, and whether, even if she were married, he should still

continue the relationship.  The following deposition excerpts show that at the time Ms.

Martin touched his groin, and he removed her hand, the consensual relationship was

ongoing:

                A.      That's when we had the little – I mean, I had told her she had
                        to be honest with me.  Because I did express to her before that
                        my feelings on adultery, my feelings on, you know, my belief
                        on that.

                        *   *   *

                        That's when she came into my cell.  That was carried out in
                        front of the office, and I went back to my cell.  Well, that's
                        when she came in.  And that was the very first time she put
                        her hand over my groin.

                        *   *   *

MEMORANDUM DECISION AND ORDER - 7

Q.     And in that time period when you were doing that, to try and get yourself in a public area, did you tell her, "Listen, we're done. I don't want anything to do with you." Anything like that at that point?

A.     I didn't say that until the incident with Khemi, and I didn't end it. I said, "Now we need to back away from this for a little while."

Q.     Okay.

A.     I wanted to investigate. I wanted to find out for myself whether this was true or not.

(Wood Depo. Tr. at 52:6-10; 52:18-22; 53:11-24, Docket No. 279-7.)

When questioned about the incident, Plaintiff responded as follows:

Q.     And so it's my understanding at that point that it's not that what she was doing was unwelcome, per se, it was that, I need to go figure out before I decide whether I'm going to continue having a relationship with you. Is that accurate?

A.      Yeah, that's agreeable. Yeah, I would say that.

(Wood Depo. Tr. at 56:16-23.)

After that incident, Mr. Wood again confronted Ms. Martin about being married, and she denied it and said she loved only him. (Wood Depo. Tr. at 62:2-6.) The conversation ended when they discovered another inmate eavesdropping, and Ms. Martin then made comments about how dirty Mr. Wood's cell was to other inmates, joked with them, and left. (Wood Depo. Tr. at 62:10-16.) Mr. Wood again indicated that he was still involved in the relationship at that time:

Q.     Before she did that during this interaction, how were you feeling about the conversation you and she were having?

MEMORANDUM DECISION AND ORDER - 8

> A.    I wanted to believe her. I wanted– I wanted – I didn't want to believe that she would lie to me.  I wanted to believe what she was saying to me was true.  Yet there was something just telling me that it's not, you know, something's wrong here, and that's how I felt.

(Wood Depo. Tr. at 63:5-15.)

And at a later date, when Ms. Martin came into Mr. Wood's cell and was upset over losing a bid to work on Mr. Wood's unit and being placed on a transport shift instead, it was apparent that the relationship still had not ended:

> Q.    Any kind of intimacy between the two of you in that encounter?

> A.    No.  There was closeness.  She came – she was sitting right next to me on my bed.

> Q.    And you were okay with that?

> A.    At the beginning, no, when she came in.  I didn't know what it was about, but you kind of lose things, you know.  I guess when compassion and, you know, when someone has a problem, you tend to turn to the problem and not the problem that you were having, but their problem.  And so I wouldn't say after – the initial, yes, but not after that.  After she told me why she was leaving.
> 
>        And I started second-guessing my motives of putting things off, questioning my belief.  Maybe this is what it's meant to be regardless of the marriage or not, maybe I should just do it.  A lot of things entered my mind at that time.
>
>        I didn't – I was torn between wanting to push her away and say see you later, have a good – you know, what's done is done, and then doing the deed, you know, or just getting back involved in what we could get back involved in.
>
>        And anyway that she could get out of that, you know, was a point.  I didn't want to lose her, you know.  It was a toss up.

MEMORANDUM DECISION AND ORDER - 9

(Wood Depo. Tr. at 71:4-25; 72:1-6.)

Thus, under the standard established in *Freitas,* the Court concludes that because Mr. Wood had not ended the consensual relationship and Ms. Martin's touching of Mr. Wood's groin was not "unwelcome per se," this incident does not rise to the level of an Eighth Amendment violation.  Defendant Martin is entitled to summary judgment on this portion of the Eighth Amendment claim.

<u>Second Incident</u>

The second incident Mr. Wood complains of was the first pat search after Mr. Wood ended the consensual relationship with Ms. Martin.  Mr. Wood described the timing of the incident as follows:

> Q.    Tell me now kind of where we're falling in line of the event where she came into the room and touched your penis.
>
> A.    It was after her nice period – or sorry mode, not nice period.  I was seeing her regret, apologizing to me when she knew, you know, the question about getting back together.  She knew that that wasn't going to happen.  It was right after that she came to my house.

Further, when asked to describe the incident itself, Mr. Wood answered as follows:

> A.    I was in my shorts, gym shorts, and she told me to get on the wall.  This was in my house.  You could plainly see, I had my T-shirt and my gym shorts on. And I said, "I don't have anything." She started from my sleeves coming down my shirt. She didn't touch my buttocks.  She reached around into my shorts and grabbed ahold of my penis and started to stroke it.

MEMORANDUM DECISION AND ORDER - 10

Q.     How long did she do that?

A.     Maybe a few seconds, you know.  It was- my mind's flaring
       at that time.

Q.     How did you end that?

A.     I spun around and reached for her hand.

*   *   *

A.     I know she was out of line doing it.  I expressed you know,
       my dislike for it.  She did say that, "You know you want it."
       I told her I didn't.

(Wood Depo Tr. at161:l5-25; 162:1-15.)  At that moment, Mr. Wood testified, his

roommate Harry Reed came into the cell and Ms. Martin left.

        Defendants  argue that Ms. Martin's alleged "stroking" of Mr. Wood's penis after

the consensual relationship had ended does not constitute an Eighth Amendment violation

because Ms. Martin's state of mind was not sufficiently culpable to satisfy the subjective

component of the standard described in *Bromwell* above–that Ms. Martin acted

maliciously and sadistically for the very purpose of causing Mr. Wood harm.  Defendants

argue that Ms. Martin's alleged action was not intended to harm Mr. Wood but to resume

the relationship and to cause Mr. Wood to reciprocate as he had done before.

(Defendants' Memo, Docket No. 279-14, p. 11.)  In response, Mr. Wood argues that Ms.

Martin's action was unwelcome because it occurred after the consensual relationship had

MEMORANDUM DECISION AND ORDER - 11

ended and that it was comparable to the action by Officer Kyle in *Bromell*.[2] [3]  The Court

disagrees.  Officer Kyle's alleged actions in *Bromell* did not occur between an inmate and

officer who had previously engaged in a consensual relationship.[4]  Instead, Officer Kyle

allegedly sexually harassed the plaintiff in front of a group of other inmates in an attempt

to embarrass and demonstrate his power.  No such forceful or public action occurred in

this instance.  Mr. Wood admits that this incident occurred prior to the "aggressive and

vindictive" pat searches that occurred later.  (Wood Depo. Tr. at 161:7-14.)

     With respect to Mr. Wood's other arguments, Mr. Wood has offered no evidence

that Ms. Martin allegedly "stroked" his penis for any other reason than to attempt to

persuade him to resume the relationship.  In his deposition testimony he noted that when

he broke off the relationship, which allegedly occurred close to the time of this incident,

Ms. Martin was "very sad" and said "she loved me and that she wanted to get – you

---

[2]In *Bromell*, Plaintiff alleged the following.  Defendant Officer Kyle "approached
Bromell from behind and placed his penis against Mr. Bromell's buttocks without Mr. Bromell's
consent.  Defendant Officer Kyle then reached around to Mr. Bromell's chest and squeezed his
pectoral muscles.  Defendant Officer Kyle then ran his hands down to Mr. Bromell's penis,
squeezed his genitals, and said, "you fuckin' inmates must like this shit if you're in here.  Do
you like it when I do this?"'
Based on this behavior, the Court held that if a bodily search is performed in a harassing manner
intending to humiliate and inflict psychological pain it can rise to the level of an Eighth
Amendment Violation.  Further, the Court explained that fondling an inmate's penis is not
reasonably related to any legitimate penological interest.

[3] Plaintiff also argues that under Idaho Code §18-6110, it is questionable whether he
could consent to such touching.  Response Docket No. 284, p.5.  However, as the meaning and
application of I.C. 18-6110 is not at issue before this Court, the Court will not consider it further.

[4] The Court also notes, that the court in *Bromell* was considering a motion to dismiss, not
a motion for summary judgment, which entails a lower standard of proof on the part of the
plaintiff.

know, mend the things that we've had broken, and she asked me what she could do." (Ex.

A - Part 2, p. 147 ll. 10 - p. 148 ll. 9.)  Later, he testified that Ms. Martin was treating him

"as someone who probably caused her a lot of pain."  Based on Mr. Wood's testimony

and the evidence in the record, the Court finds that there is no evidence to support the

conclusion that Ms. Martin acted maliciously and with the intent to inflict harm.  Further,

Mr. Wood does not allege any specific psychological or physical harm resulting from the

brief incident other than the pain caused him by the conclusion of the relationship.  Thus,

the Court concludes that there is no evidence that this incident meets the objective and

subjective components required for an Eighth Amendment violation.  Ms. Martin is

entitled to summary judgment on this portion of the claim.[5]

---

[5]  In his deposition, Mr. Wood also spoke of another incident that occurred during the
consensual relationship:

> A.   The first one was when I'd come back on the tier when we had
> something going, it was the pat searches, yes.  And I raised a
> question to her at that time that, "please don't do that," because it
> was done for arousal purposes, and she did arouse me.  And I don't
> feel comfortable being in a group on inmates while I'm... while
> she's doing this to me.
>
> Q.   So that happened even back when –
>
> A.   Yes.
>
> Q.   – you two were involved?
>
> A.   Yes. . . .

(Wood Depo. Tr. 148:19 to 149:5, Docket No. 279-7.)  The pat search performed for "arousal
purposes," though inappropriate and in front of other inmates, did occur during the course of the
consensual relationship.  Thus, even though it might have embarrassed Mr. Wood in front of
other inmates, the contact was not unwelcome.  Thus, under the *Freitas* standard, Ms. Martin's

MEMORANDUM DECISION AND ORDER - 13

Third Set of Incidents

Mr. Wood alleges that after he definitively broke off the relationship with Ms.

Martin and she learned of his relationship with Correctional Officer Cheryl Davis, Ms.

Martin performed approximately 16 pat searches on him over the course of approximately

15 months.  He describes the type of searches Ms. Martin performed as follows:

> [T]hese were vindictive.  These were a little more aggressive.  She
> would actually press her breast against my back and grope me very hardly.
> This was around other inmates, as well.

(Wood Depo. Tr. at 149:5-9, Docket No. 279-7.)

When asked to describe the first of these pat searches, Mr. Wood testified in

deposition:

> A.   It started with my arms and coming down, going down my chest, my
> back, moving up cupping my groin and going down the other side.
> A regular – I mean, a pat search, but it was – it was a rough one.
>
> Q.   And when you say "A rough one"?
>
> A.   Rough, she was not – a pat search, to me, is one that feels, but she was
> grabbing.  She was grabbing.
>
> Q.   Did she grab your groin?
>
> A.   Yeah. During – yeah the pat search.
>
> Q.   Was there pain in this pat search?
>
> A.   No.

---

alleged actions, though despicable if true, could not have been said to have caused pain rising to
the level of an Eighth Amendment violation.

MEMORANDUM DECISION AND ORDER - 14

Q.      Just you were uncomfortable that –

A.      Yeah.

(Wood Depo. Tr. at 150:12-151: 2.)  He also testified that Ms. Martin told other inmates

who observed the search, "Oh, he likes it."  (Wood Depo. Tr.  at 151:10.)

As to the other searches performed by Ms. Martin after that date, he testified:

> A.      Periodically, it was at the ball fields, pat searches on the
> fence, the only excluded.  I mean, I was the only one pulled
> over.
>      Ball field shakedowns are unheard of up there.  You
> don't get them.  I was during an intermission period.
> You may get a pat search either leaving the ball field
> or coming into the ball field, and that was few.  But
> you just don't get selected out of a group of individuals
> and put on the fence, and this was an ongoing thing.
>
>      I would say it happened, by best recollection, maybe six
> times on the ball field.
>
> Q.      And were these the aggressive searches?
>
> A.      These were–everything after this point was aggressive
> towards me.  Others were in the hallway in the movement
> period of time, either going up to the school or in the
> basement–
>
> Q.      How many, approximately?
>
> A.      I would say more than ten.
>
> Q.      In the hallway?
>
> A.      Yeah.  A lot more than what it was on the recreation yard.
> There were–and the reason why the time, she sometimes
> worked the recreation yard and then it could be two to three
> weeks before she worked again.

MEMORANDUM DECISION AND ORDER - 15

> And one–I believe one time she did it twice to me on the shakedown in the rec yard.
>
> Q.    Was she the only one that was doing this with you?
>
> A.    Yes, I would say absolutely.
>
> Q.    No other guards pat-searching?
>
> A.    As aggressively, no.
>
> Q.    But you were receiving other–
>
> A.    Pat searches?
>
> Q.    –pat searches from other guards?
>
> A.    Very seldom.  Very seldom.

(Wood Depo. Tr. at 156:10 to 157:22, Docket No. 279-8.)  Mr. Wood testified that these "aggressive and vindictive" pat searches made him feel "mad, angry, upset, embarrassed, frustrated, put them in a pile."  (Wood Depo. Tr. at 159:8-13.)  Mr. Wood also testified that he finally reported the harassment to Sergeant Lucille Townsend because "[i]t got to the point where I had to go confront inmates that Sandy [Martin] started to send to me to try to beat me up."  (Wood Depo. Tr. at 171:11-20.)

Ms. Martin denies Plaintiff's allegations, but on summary judgment, the Court must view the facts in a light most favorable to the non-moving party.  Direct testimony of the non-movant must be believed, however implausible.  *Leslie v. Grupo ICA*, 198 F.3d at 1159.  Based on the foregoing, the Court finds that there is a genuine issue of material fact regarding whether Ms. Martin subjected Mr. Wood to either unwanted sexual groping

during her pat searches or calculated harassment as a result of repeated searches that were unusual in the type, place, and number of searches.  Either way, the alleged actions, if true, would violate the Eighth Amendment.  *See Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *Vigliotto v. Terry*, 873 F.2d 1201, 1203 (9th Cir. 1989). Therefore, the Court will deny Ms. Martin's Motion for Summary Judgment with respect to the third set of pat searches described as vindictive, aggressive, and sexual groping incidents that occurred after Mr. Wood made it clear to Ms. Martin that he was ending the consensual relationship with her.

**Count III- Violation of Fourth Amendment**

Mr. Wood argues that the third set of pat searches described as vindictive, aggressive, and sexual groping incidents also violated his Fourth Amendment right to privacy.  The United States Supreme Court has considered whether convicted inmates retain any expectation of privacy under the Fourth Amendment.  In *Bell v. Wolfish*, 441 U.S. 520 (1979), the Supreme Court assumed that convicted prisoners and pretrial detainees "retain some Fourth Amendment rights upon commitment to a corrections facility," but held that they lose a right of privacy from unannounced searches of their cells and routine body cavity searches. *Id*. at 558-60; *see also Hudson v. Palmer*, 468 U.S. 517, 526 (1984) (noting that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell").[6]

---

[6]  More recently, in *Samson v. California*, 547 U.S. 843 (2006), the Court held that "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a

The United States Supreme Court has not addressed the question of a bodily search conducted in a sexually invasive manner and/or conducted for the purpose of harassing an inmate.  The United States Court of Appeals for the Ninth Circuit has addressed these questions and has concluded that the Fourth Amendment does apply in such circumstances.

In *Jordan v. Gardner*, 986 F.2d 1521 (1993), the Ninth Circuit Court found it unnecessary to reach a Fourth Amendment claim that male guards violated female prisoners' privacy rights by conducting random, nonemergency, suspicionless clothed body searches because the Court held that such searches violated the Eighth Amendment. The type of searches at issue were described as follows:

> According to the prison training material, a guard is to "[u]se a flat hand and pushing motion across the [inmate's] crotch area."  WCCW, Pat-Down Searches of Female Inmates (n.d.)  The guard must "[p]ush inward and upward when searching the crotch and upper thighs of the inmates."  *Id.* All seams in the leg and crotch area are to be "squeez[ed] and knead[ed]."

986 F.2d at 1523.

The Ninth Circuit Court likewise had before it Fourth and Eighth Amendment issue in a recent pretrial detainee case, *Byrd v. Maricopa County Sheriff's Department*, 565 F.3d 1205 (9th Cir. 2009).  There, a male pretrial detainee alleged that a female officer had conducted a pat search while he was wearing only underwear in a manner that violated his Fourth Amendment rights.  The Ninth Circuit Court reiterated that, in this

parolee."  *Id.* at 857.

MEMORANDUM DECISION AND ORDER - 18

circuit, "the Fourth Amendment does apply to the invasion of bodily privacy in prisons,

but the 'reasonableness of a particular search is determined by reference to the prison

context.'" *Byrd*, 565 F.3d at 1220 (quoting *Michenfelder v. Sumner*, 860 F.2d 328, 332

(9th Cir. 1988)). That is, prison officials "may restrict or withdraw rights to the extent

necessary to further the correctional system's legitimate goals and policies."  *Byrd*, 565

F.3d at 1220 (quoting *Grummett v. Rushen*, 779 F.2d 491, 493 (9th Cir. 1985)).

     In *Byrd*, the Court explained the Fourth Amendment test as follows:

> *Bell* mandates a "test of reasonableness," which "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." 441 U.S. at 559, 99 S.Ct. 1861. In evaluating Fourth Amendment claims brought by incarcerated persons, *Bell* directs us to consider: (1) "the scope of the particular intrusion"; (2) "the manner in which it is conducted"; (3) "the justification for initiating it"; and (4) "the place in which it is conducted." *Id*.

     The *Byrd* Court further determined that the standard of *Turner v. Safley*, 482 U.S.

78 (1987) must also be applied to a Fourth Amendment claim to determine

reasonableness:

> [In *Turner*] [t]he Court set forth several factors as being "relevant in determining the reasonableness" of a prison regulation or practice: (1) "there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," which, if the impact is substantial, requires particular deference to corrections officials; and (4) "the absence of ready alternatives" as evidence of the reasonableness of a prison regulation, or "the existence of obvious, easy alternatives" as evidence that the regulation "is an 'exaggerated response' to prison concerns."

*Byrd*, 565 F.3d at 1220.

In *Byrd*, the trial court first sent several factual issues to the jury, and then determined the Fourth Amendment claim and other constitutional claims as a matter of law:

> The district court concluded that the factual disputes over the purpose of the search and the manner in which it was conducted should be decided by the jury. The court held that if the jury found that the County had conducted the search for an identified security need, and if the jury found that O'Connell had not conducted the search in an inappropriate manner (*i.e.*, by intentionally squeezing or kneading Byrd's penis or scrotum, or improperly touching his anus through his underwear), then the search would violate neither Byrd's substantive due process nor his Fourth Amendment rights as a matter of law. The court denied Byrd's cross motions for judgment as a matter of law.
>
> In light of these rulings, the district court submitted three issues to the jury: (1) whether Byrd had proved that O'Connell "deprived him of his right against unreasonable search[es] by intentionally squeezing or kneading his penis or scrotum or improperly touching his anus through his underwear"; (2) whether O'Connell deprived Byrd of due process of law by taking any inappropriate actions during the search, which actions had inflicted pain on Byrd, and which infliction was wanton; and (3) whether O'Connell violated Byrd's right against unreasonable searches "by conducting a search not done for [an] identified security need."

565 F.3d at 1211-12.

Here, the Court assumes that the Ninth Circuit will continue to apply the Fourth Amendment in the manner set forth in *Michenfelder* and *Byrd* regardless of whether the complaining inmate is a pretrial detainee or a convicted prisoner.  In light of the Ninth Circuit precedent, the Court concludes that there are genuine issues of material fact that prevent the granting of summary judgment in favor of Ms. Martin on the third set of pat

MEMORANDUM DECISION AND ORDER - 20

searches for the following reasons: (1) Mr. Wood alleges that the searches were sexual in nature because they included "groping" or "grabbing" of his groin area (a description that is similar to the "squeezing" and "kneading" in the unlawful searches described in *Jordan* and *Byrd*); (2) Mr. Wood alleges that he was the only prisoner singled out for pat searches on the ball field (a location where pat searches were infrequently performed); (3) Ms. Martin was the only officer searching Mr. Wood in this manner; and (4) Mr. Wood alleges that Ms. Martin was not performing the searches for legitimate reasons, but because she was angry and upset about their break-up.  (Plaintiff's Response, Docket No. 284, pp. 6-7; Wood Depo. Tr., pp. 156-160.)

Because a genuine issue of material fact exists as to these pat searches, the Court cannot apply *Bell* and *Turner* until the factual issues are resolved.  As a result, Defendants' Motion for Summary Judgment on the Fourth Amendment claim regarding the third set of incidents must be denied without prejudice.

## Count V - Eighth Amendment Claim against IDOC Supervisory Defendants

In Count V of Mr. Wood's Second Amended Complaint, he alleged claims against former IDOC Director, Tom Beauclair, former OPS Lead Investigator Keith Yordy, former ICIO Warden, Phil Foster, and former ICIO Lieutenant LaWanda Thompson for violations of his Eighth Amendment right to be free from cruel and unusual punishment. Specifically, Mr. Wood alleges that these supervisory Defendants failed to protect him from Ms. Martin's actions in this case.

In order to establish a claim that a prison administrator or supervisor failed to

MEMORANDUM DECISION AND ORDER - 21

protect an inmate from harm, the inmate must show that the defendants were deliberately

indifferent to the inmate's needs.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal

citations omitted).  Deliberate indifference exists when an official "knows of and

disregards an excessive risk to health or safety; the official must both be aware of facts

from which the inference could be drawn that a substantial risk of serious harm exists,

and he must also draw the inference."  *Id. at* 837.

Defendants suggest three reasons why this Count should be dismissed.  First,

Defendants argue that Mr. Wood cannot establish his claim that Defendants Beauclair,

Yordy, Foster, and Thomason failed to protect him because he cannot establish that Ms.

Martin violated his rights by perpetrating sexual abuse against him.  Secondly Defendants

argue that they had no knowledge or reason to believe Mr. Wood required protection

from Ms. Martin, and third, Mr. Wood was not entitled to protection from the

consequences of his own actions.   Mr. Wood responds arguing that Ms. Martin had a

history of inappropriate touching of inmates, and that at the very least IDOC had potential

knowledge that Ms. Martin posed a risk to Mr. Wood's safety.

First, the Court finds that because Mr. Wood's first and second claims for sexual

harassment occurred during a consensual relationship and cannot survive summary

judgment, his claims against Ms. Martin's supervisors on the same grounds fail as well.

Next, the Court disagrees with Mr. Wood's conclusion that prison officials should have

known that Ms. Martin posed a potential danger to inmates such as Mr. Wood, either as to

the risk of sexually inappropriate behavior or calculated harassment.  In support of his

MEMORANDUM DECISION AND ORDER - 22

argument, Mr. Wood cites to notes from Ms. Martin's personnel file relating to Ms.

Martin's inappropriate behavior with the inmates.  Specifically, he quotes a Memorandum

of Counseling signed by Lt. Thomason on May 1, 2003, which states:

> ...placing hands on inmates in a manner not consistent with good
> correctional practice i.e. touching or squeezing the inmate(s) arm, patting
> the inmate(s) on the back, draping an arm on an inmate(s) shoulder,
> touching inmate(s) with her foot... Being too familiar with the inmate(s) by
> divulging too much personal information about herself to the inmate(s),
> being too friendly in her manner of joking with the inmate(s) and verbally
> disagreeing with a staff member over a matter concerning inmate(s) in the
> inmate(s) presence. . .  Physically aligning herself with the inmate(s) rather
> than the staff.  During staff/inmate meeting she needs to sit with the staff,
> not the inmate(s).

Mr. Wood also points to Sergeant Townsend's deposition testimony that she had

witnessed Ms. Martin perform pat searches in an improper manner using a "hug

technique" which included pressing her breasts against an inmate's back.  (Response,

Docket No. 284, p. 7.)  Evidence in the record reflects that Ms. Martin performed this

type of search because she was very short.  When she was told to use a different method,

she apparently complied with the advice.  (Lucille Townsend Deposition Transcript, at

26:5-25 to 26:1-7, Docket No. 284-9.)

Even though Ms. Martin's personnel file shows her inappropriate "friendly"

touching of inmates, none of the evidence suggests that this touching was sexual in

nature, that Ms. Martin was engaging in inappropriate sexual relationships with inmates,

or that Ms. Martin was harassing inmates in any other manner.  Thus, the Court finds that

this type of documented "too familiar" and "too friendly" conduct is not sufficient to put

the prison officials on notice that Ms. Martin was engaging in sexual contact or otherwise harassing the prisoners. "Deliberate indifference" requires a showing that the official was "subjectively aware of the risk." *Id.*, 511 U.S. at 829. Here, there is no clear evidence in the record that would have alerted the supervisory Defendants that Ms. Martin was likely to engage in a sexually inappropriate relationship Mr. Wood; for example, there is no indication that she had engaged in sexually inappropriate behavior with any inmate prior to the incidents reported by Mr. Wood, nor is there any evidence showing that these supervisory Defendants were aware of the relationship between Mr. Wood and Ms. Martin and yet ignored it. In particular, Mr. Wood testified at deposition that he did not tell any supervisor about Ms. Martin's behavior because he believed he would be transferred or segregated (Wood Depo. Tr. at 163:13-25), and he did not tell them about the vindictive and aggressive pat searches after the relationship had ended. (Wood Depo. Tr. at 153:13-15.) When Mr. Wood finally reported the incidents for investigation, he did so to Sergeant Lucille Townsend, a nondefendant. (Wood Depo. Tr. at 171:11-20.)

Based on the foregoing, the Motion for Summary Judgment on Count V will be granted for failing to show that the supervisory Defendants were deliberately indifferent to Mr. Wood's circumstances.

## Count VII - Wrongful Confiscation of Witness Statements

Count VII of Mr. Wood's Second Amended Complaint alleges that Defendant Lieutenant LaWanda Thomason wrongfully confiscated written inmate statements from Mr. Wood, violating his First Amendment rights. An inmate has a constitutional right to

MEMORANDUM DECISION AND ORDER - 24

access the courts, *Bounds v. Smith*, 430 U.S. 817, 821 (1977), and may recover for denial of that right in a civil rights lawsuit if he or she can demonstrate that an actual injury occurred as a result of the alleged denial.  *Lewis v. Casey*, 518 U.S. 343, 352-53 (1996). In *Lewis v. Casey*, the United States Supreme Court noted that the right to access the courts is a limited one, aimed at ensuring that prisoners may initiate their legitimate petitions and complaints.  *See id.* at 354.

Here, Mr. Wood's claim is asserted against LaWanda Thomason, but Defendant Thomason points out that Mr. Wood is alleging that non-defendant Lucille Townsend collected statements from inmates and that Defendant Thomason then took those statements from non-defendant Lucille Townsend.  Mr. Wood does not provide any substantive response to Defendant Thomason's argument that she is entitled to summary judgment on this claim for lack of proof as to personal participation in the alleged violation.  Further, the Court notes that Mr. Wood has not presented any evidence that these statements were ever taken by non-defendant Lucille Townsend in the first place. Because Plaintiff has not come forward with sufficient facts supporting a First Amendment claim, the Motion for Summary Judgment with respect to Count VII will be granted in favor of Defendant Thomason.

**Conclusion**

Based on the foregoing, the Court finds and concludes that Defendants are entitled to summary judgment on all claims except the Eighth and Fourth Amendment claims regarding the third set of incidents asserted against Defendant Sandra Martin that Mr.

MEMORANDUM DECISION AND ORDER - 25

Wood describes as pat searches that were vindictive, aggressive, sexual groping incidents.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' unopposed Motion to Extend Page Limits (Docket No. 286) is GRANTED.

IT IS FURTHER HEREBY ORDERED that Defendants' Motion for Summary Judgment (Docket No. 279) is GRANTED in part and DENIED in part.  All claims in Count I and II alleged against Ms. Martin are dismissed with prejudice except the Eighth and Fourth Amendment claims regarding the third set of incidents.  All claims in Count V asserted against IDOC Defendants Tom Beauclair, Keith Yordy, Phil Foster, LaWanda Thomason are dismissed with prejudice; and all claims in Count VII asserted against Defendant LaWanda Thomason are dismissed with prejudice.

IT IS FURTHER HEREBY ORDERED that counsel for the parties are to confer and file within the next fourteen (14) days a statement of whether they wish to attend a settlement conference on the remaining claims and a proposed pretrial schedule and trial date, setting forth the anticipated length of trial.

DATED:  **September 22, 2009**

Honorable B. Lynn Winmill
Chief U. S. District Judge

MEMORANDUM DECISION AND ORDER - 26