UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LANCE WOOD,<br><br>              Plaintiff,<br>  v.<br><br>SANDRA MARTIN,<br><br>              Defendant. | Case No. 3:04-cv-00099-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Plaintiff's Motion for Contempt Hearing (Dkt. 464), Plaintiff's Motion for Protective Order (Dkt. 468), Plaintiff's Motion for Appointment of Counsel (Dkt. 505), and Plaintiff's Motion for Emergency Protective Order (Dkt. 506).

## ANALYSIS

### 1.    Motion for Contempt Hearing

In his Motion for Contempt Hearing, Plaintiff asks for a contempt hearing against Idaho Department of Corrections ("IDOC") officials for allegedly recording his attorney phone calls, monitoring his attorney visits, and opening and reviewing his legal mail. He

makes additional allegations that IDOC officials are intimidating and harassing Renee McKenzie, Denise Sheldon, other witnesses, and himself. Finally, he argues that IDOC officials are working with *Balla* representative Barry Searcy to eliminate Wood from being a *Balla* representative, and eliminating Ms. McKenzie from assisting him. *Balla* is a prison conditions class action pending before this Court as a separate matter.

Wood filed a short memorandum in support of his contempt motion. In that memorandum, he essentially lists the same allegations contained in the motion. He cites no rule, no case law, and no other authority in support of his request. Accordingly, the Court will deny the Motion for Contempt Hearing. The Ninth Circuit has indicated that "[t]he standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *F.T.C. v. Affordable Media,* 179 F.3d 1228, 1239 (9th Cir. 1999). Here, Wood references no court order, let alone a specific and definite order. Therefore, he cannot show that IDOC violated such an order.

However, whether by mistake or not, Wood attached his Motion for Protective Order and accompanying declarations in support of that motion to his contempt motion. This makes little sense, and these documents do nothing in the way of citing authority for a contempt finding. Instead, they simply confuse the matter.

Under these circumstances, the best way to address Wood's allegations – even those asserted in his Motion for Contempt Hearing – is within the context of his Motion

for Protective Order. A review of the two motions reveals that they make essentially the same allegations, and as stated above, contempt is not the proper course of action here.

The only issue raised in the contempt motion which the Court will not address under the Motion for Protective Order is the allegation regarding the *Balla* matter. Any concerns regarding that matter must be brought to the Court's attention in that case – the Court will not confuse the cases by addressing that case in this Order.

## 2.      Motion for Protective Order

Federal Rule of Civil Procedure 26(c) indicates that the Court may, for good cause shown, issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c)(1). In his Motion for Protective Order, Wood asks the Court for an order protecting certain individuals from retaliation, harassment, and intimidation from IDOC. Those individuals include Wood, Renee McKenzie, Denise Sheldon, and several other IDOC inmates. As noted above, the Court will also address Wood's allegations about IDOC's alleged violation of his attorney-client privileged communications.

### A.      Attorney-Client Privileged Communications

The Court will begin by addressing the alleged attorney-client privilege violations because they permeate many of Wood's other allegations. The attorney-client privilege protects confidential disclosures from a client to his attorney in order to obtain legal advice, plus the attorney's advice in response to such disclosure. *U.S. v. Ruehle,* 583 F.3d 600, 607 (9th Cir. 2009). (Internal citation omitted). All communication with a lawyer is

not privileged simply because one party is a lawyer. *Id.* The attorney-client privilege is strictly construed because it impedes full and free discovery of the truth. *Id.*

Generally, the courts look to an eight-part test in determining whether information is covered by the attorney-client privilege: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *Id.* The party asserting the privilege bears the burden of proving each element. *Id.* The attorney-client privilege may extend to communications made to or by an attorney's employees, including legal secretaries, legal assistants, and paralegals. *Ceglia v. Zuckerberg*, 2012 WL 3527935, *2 (W.D.N.Y. 2012) (Citing *United States v. Kovel*, 296 F.2d 918, 921 (2d Cir.1961).

In this case, Wood alleges that IDOC officials violated his attorney-client privileged communication with ReNee McKenzie by opening and reviewing his correspondence with her, and by monitory his telephone communications with her. The problem with Wood's allegation is obvious – ReNee McKenzie is not an attorney. Moreover, although Ms. McKenzie apparently works for her husband, Curt McKenzie, who is a licensed attorney, Mr. McKenzie has never represented Wood or made an appearance on his behalf in this case. Accordingly, there is no privilege between Wood and Mr. McKenzie which could extend to Ms. McKenzie as an agent of Mr. McKenzie.

Therefore, correspondence between Wood and Ms. McKenzie is not protected by the attorney-client privilege.

To the extent Wood also makes these allegations with respect to Denise Sheldon, the Court reaches the same conclusion. Ms. Sheldon is apparently either Ms. McKenzie's assistant or somehow otherwise employed at McKenzie Law Offices. However, she is not an attorney, and Wood's communication with her likewise gains nothing from Ms. Sheldon's association with Mr. McKenzie.

### B.       Alleged Harassment and Intimidation of Witnesses

Not including Ms. McKenzie and Ms. Sheldon, which the Court will address separately, Wood asserts that IDOC officials have harassed and intimidated twelve potential witnesses in this case including himself. All of these individuals appear to be inmates being held within an Idaho prison. Four of these individuals, including Wood, filed declarations in support of Wood's motion. However, none of the declarations provide sufficient evidence of good cause for issuing a protective order as explained below.

The first declaration is from Rick Spor. Mr. Spor states that prior to testifying in this case, a Deputy Attorney General and counsel for defendant Martin visited him. *Spor Decl.,* Dkt. 468. Mr. Spor indicates that these visits "frightened" him, causing him to believe that he would be retaliated against if he testified at the trial. *Id.* However, Mr. Spor did, in fact, testify at the trial after these visits occurred. He was not so frightened that it prevented him from testifying, and he gives no testimony about actually being

retaliated against for giving that testimony. Spor further states that Wood's recent DOR (Disciplinary Offense Report at the prison), and "how some of the correctional officers have been treating" him may result in his refusal to testify for Wood at the next trial. *Id.* These general allegations do not evidence intimidation or harassment.

The second declaration is that of Daniel Croney. Mr. Croney also testified at the earlier trial. He simply states that he is "terrified" that he will be "retaliated against" if he testifies at trial. *Croney Decl.,* Dkt. 468. Like Mr. Spor, Mr. Croney's generalized comments do not evidence intimidation or harassment, and Mr. Croney's willingness to testify at the earlier trial suggest he is not afraid to testify on behalf of Mr. Wood.

Keith Brown is the third declarant. Mr. Brown indicates that he has been disciplined for being a witness for Wood and testifying against the prison's paralegal. He also states that he expects retaliation because he is a "litigator." However, Mr. Brown is not listed on the witness list in this case, and he did not testify in the earlier trial. If he testified in another matter, there is no record of that in this case. Under these circumstances, Mr. Brown offers no specific evidence that IDOC officials have intimidated or harassed him, and no good cause why the Court should enter a protective order.

Wood's own declarations also do not show good cause for issuing a protective order. The bulk of one declaration makes allegations against opposing counsel who is not an IDOC employee, or relates to Ms. McKenzie and Ms. Sheldon, which will be addressed below. With respect to other witnesses, Wood only asserts that witnesses have

been "retaliated against by defendants and other IDOC personnel, in many numbers of ways to prevent witnesses from testifying, . . . and to punish witnesses. . . ." *Wood Decl.,* Dkt. 468. He also states that "IDOC staff are driving a wedge between myself and witnesses in the case." *Id.* His other declaration makes only general accusations that IDOC officials have monitored his attorney-client communications so they can intimidate and harass witnesses. *Wood Decl.,* Dkt. 464-2. As noted above, his communications are not privileged. Moreover, like the assertions made by the other declarants, these blanket assertions are not compelling.

Finally, the Court notes that it has received and reviewed ReNee McKenzie's separately filed document entitled Affidavits in Support of Lance Wood's Motion for Contempt Hearing. (Dkt. 500). Attached to the affidavit is a letter written by Ms. McKenzie and several declarations which appear to be declarations from other cases involving the prison. Ms. McKenzie's name and address are listed in the top left corner of the affidavit where an attorney of record or *pro se* party typically places their name and contact information. Wood's name and address are not on the document. Ms. McKenzie also signed the document; Wood did not.

Ms. McKenzie's filing is improper. As the Court will explain below, this is not the first time Ms. McKenzie has overstepped the bounds in this case. Wood represents himself *pro se* in this matter. Accordingly, only he is allowed to file documents on his behalf. Ms. McKenzie has no official role in this case – even the minimal role of assisting Wood at trial has been rescinded. (Dkt. 471). Therefore, at best, Ms. McKenzie's filing is

simply information the Court cannot consider in this case. However, because it advocates a position consistent with that sought by Mr. Wood, it may also constitute the unauthorized practice of law. *Idaho Code* §§ 3-104, 3-420. Either way, the Court will not consider her personal filings in this case.

The Court will also caution Wood and Ms. McKenzie that the Court will not accept any future filings in this case from Ms. McKenzie on her own behalf. She may act as a courier for Wood, but anything she files must be addressed from Wood, and signed by him as the *pro se* plaintiff in this case.

### C.    Alleged Harassment and Intimidation of McKenzie and Sheldon

Wood also asserts that IDOC officials have harassed and intimidated Ms. McKenzie and Ms. Sheldon. In support of his claim, Wood attaches declarations from himself, Ms. McKenzie, and Ms. Sheldon. A good portion of the McKenzie and Sheldon declarations are dedicated to information about three other potential witnesses. It is not altogether clear why this information was provided to the Court. Regardless, Wood has not asked the Court for a protective order regarding these other three witnesses, so the Court will not address them.

The remainder of the material in the declarations makes only general accusations of intimidation and harassment, much of it directed at opposing counsel. None of it rises to the level of good cause warranting a protective order.

### 3.    Motion for Appointment of Counsel and Motion for Emergency Protective Order

Wood asks the Court for a second, emergency, protective order. He does not specifically say what he wants the Court to do, but essentially reiterates his accusations that IDOC is harassing and intimidating him and his witnesses. For the most part, he makes more general allegations taking issue with how he has been disciplined at the prison. These allegations do not establish good cause for issuing a protective order.

He also suggests that IDOC prevented him from filing his declaration as requested by the Court. Recently, after learning that Wood believed IDOC was preventing him from filing documents with the Court in this case, the Court conducted a hearing with the parties. (Dkt. 502). At the hearing, the Court ordered Wood to provide the Court with a declaration explaining his allegations and why he believed IDOC was preventing him from filing documents with the Court. The Court ordered IDOC to make sure Wood was allowed to file the declaration by March 25, 2013.

Wood now contends that IDOC failed to retrieve his declaration, and that he therefore could not file it with the Court. He claims that he still has it in his possession. However, Wood was able to file both his Motion for Emergency Protective Order and Motion for Appointment of Counsel on March 26, as well as a reply brief in support of those motions on March 29. This is clear evidence that IDOC is not preventing Wood from filing documents with the Court. Wood could have submitted his declaration with those motions.

Wood's argument that he was only able to file his motions because he dictated them to ReNee McKenzie who filed them with his "full written power of attorney" is

unpersuasive. Wood suggests that he could file the motions, but not the declaration, through Ms. McKenzie because the declaration required his signature. However, Wood did not present the Court with a document indicating that Ms. McKenzie has a valid power of attorney for Wood in accordance with Idaho law. *See I.C. §§ 15-12-105 and 106*. More importantly, the original motions and the reply brief contain Wood's wet signature in blue ink – they are not signed by ReNee McKenzie under Power of Attorney or as attorney-in-fact for Wood in accordance with ABA guidelines. (Dkts. 505, 506 & 508). Thus, the documents were either signed by Wood or forged by Ms. McKenzie.

Regardless, Wood's suggestion that IDOC had a duty to proactively retrieve the declaration from Wood is wrong. The Court simply ordered IDOC to make sure it provided the Court with anything Wood provided to IDOC for filing. IDOC's paralegal filed an affidavit indicating that he made himself available at the legal resource center on March 25 to receive documents from Wood, but Wood did not provide him with anything. *Stewart Aff.,* Dkt. 507-1. Under these circumstances, the Court concludes that the only reasonable explanation for why Wood did not file the declaration is that he chose not to do so.

### A.    Wood's Relationship with Ms. McKenzie

Finally, Wood complains that IDOC has prevented him from contacting Ms. McKenzie. In the related Motion for Appointment of Counsel, he also asserts that by removing Ms. McKenzie from the case, the Court has removed his ability to contact his witnesses, blocked his access to the Court, and allowed IDOC to block his legal mail. He

therefore asks the Court to appoint counsel for him in this case. He cites no authority supporting his request, and the Court will not appoint counsel to represent him in this civil matter.

Moreover, Wood's ongoing complaints about access to Ms. McKenzie, and Ms. McKenzie's continued presence in this case, must be resolved once and for all – it has become a side show taking up far too much time and far too many resources of the Court, counsel and the parties. Accordingly, the Court states, as it has before on the record, that Ms. McKenzie has no more right to participate in this case than the average citizen on the street. As explained above, Ms. McKenzie is not an attorney, and the Court's order permitting her to assist Mr. Wood as a legal assistant has been rescinded. The evidence before the Court indicates that the relationship between Wood and Ms. McKenzie is not a professional one, and it has created a serious security risk for the prison. A bit of background is helpful here.

Wood's remaining claims in this case – sexual harassment claims against former IDOC employee Sandra Martin – were tried to a jury in December 2012. About a month before trial commenced, Wood asked the Court to appoint Renee McKenzie as his legal assistant. Ms. McKenzie filed a declaration in support of that motion indicating that she is a "Legal Assistant" for McKenzie Law Offices, which is operated by her husband and licensed attorney, Curt McKenzie. (Dkt. 397-1). Mr. McKenzie did not appear on behalf

of Wood.[1] Instead, according to Ms. McKenzie she met with Wood and determined that she could personally assist him at trial.

Based upon Ms. McKenzie's representations, and the Court's hope that a legal assistant would make the trial run more smoothly, the Court granted the motion. However, in its order permitting this arrangement, the Court made clear that she could not act in any manner which would constitute the practice of law because she is not a licensed attorney. (Dkt. 423). After the trial ended in a mistrial, Wood again asked the Court to appoint Ms. McKenzie for the retrial. With some reservation due to Ms. McKenzie appearing to go beyond her role as a legal assistant during the first trial, the Court granted the motion, but once again admonished Ms. McKenzie that she could not act in any manner which would constitute the practice of law. (Dkt. 460).

Unfortunately, it appears to the Court that Ms. McKenzie has again overstepped her role as a legal assistant. According to Warden Blades of the Idaho State Correctional Institution ("ISCI") Ms. McKenzie identified herself as Renee McKenzie of McKenzie Law Office when she first started visiting Wood at the prison. *Blades Aff.,* ¶ 6, Dkt. 499-6. As such, Warden Blades mistakenly assumed she was working on Wood's case under the supervision of an attorney. *Id.* As a result, the prison mistakenly allowed her "virtually unfettered" access to Wood from the time she was appointed by this Court as Wood's legal assistant in November 2012 until her privileges were suspended as explained below. *Id.*

---

[1] To the Court's knowledge, Curt McKenzie is the only attorney at McKenzie Law Offices. Regardless, no attorney from McKenzie Law Offices made an appearance on behalf of Wood.

MEMORANDUM DECISION AND ORDER - 12

On February 5, 2013, an IDOC Correctional Officer opened and scanned a letter marked "Legal Mail" sent from Wood to Ms. McKenzie which had been returned to the prison as undeliverable. *Wilson Aff.,* ¶ 5-7, Dkt. 499-3. Returned mail at the prison is monitored in accordance with prison regulations because it is an easy way for inmates to improperly communicate with each other and pass contraband. *Blades Aff.,* ¶ 9, Ex. A, Dkt. 499-6. Moreover, as explained above, communication between Wood and Ms. McKenzie is not covered by the attorney-client privilege because Ms. McKenzie is neither an attorney nor the agent of an attorney representing Wood. Additionally, the letter was clearly of a personal nature, *Blades Aff.,* ¶¶ 3, 12, 14, Dkt. 499-6; *DuToit Aff.,* ¶ 3, Dkt. 499-4, *Wilson Aff.,* ¶ 7, Dkt. 499-3, and therefore would not be privileged even if Ms. McKenzie was an attorney or an attorney's agent. *U.S. v. Ruehle,* 583 F.3d 600, 607 (9th Cir. 2009) (Explaining that all communication with a lawyer is not privileged simply because one party is a lawyer – the communication must be in regard to legal advice).

Based upon the letter and the Warden's belief that McKenzie and Wood had an inappropriate relationship, the prison temporarily suspended Ms. McKenzie's visiting privileges on February 7, 2013 pending an investigation regarding their relationship. *Blades Aff.,* ¶ 14, Dkt. 499-6. After a hearing with the parties on February 14, 2013 regarding the letter, the Court rescinded its earlier orders appointing Ms. McKenzie as Wood's Legal Assistant.

As part of its investigation into the Wood/McKenzie relationship, the prison monitored their calls, including twenty-six calls between Wood and Ms. McKenzie over the three-day President's Day weekend on February 16-18. *Kempf Aff., ¶ 5, Dkt. 499-5.* The calls lasted a total of approximately 11 hours. *Id.* The prison also reviewed the amount of past, non-monitored calls – calls between Wood and Ms. McKenzie during the time the prison mistakenly believed Ms. McKenzie was working under the direction of her husband – and determined that Wood and Ms. McKenzie had engaged in over ninety-one hours of non-monitored calls between December 2012 and February 2013. *DuToit Aff., ¶ 9, Dkt. 499-4.*

Even more troubling, the prison learned that Ms. McKenzie attempted to circumvent the monitoring of her calls from Wood by having the calls routed from the telephone line at McKenzie Law Offices – a non-monitored line because it is associated with a law firm – to her cell phone. *Kempf Aff., ¶ 5, Dkt. 499-5.* The prison also learned that Ms. McKenzie set up a P.O. Box to receive "legal mail" from Wood, but Mr. McKenzie indicated that the P.O. Box was not associated with his firm.[2] *Blades Aff., ¶ 25-26, Dkt. 499-6.* This was the P.O. Box Wood used to send the returned personal letter sent to Ms. McKenzie. This underscores the attempt by Wood and Ms. McKenzie to have unmonitored communication under the guise of legal communication. Under these circumstances, prison officials determined that, at the very least, there was a strong infatuation between Wood and Ms. McKenzie, and that it would be dangerous for them to

---

[2] The Court recognizes that some of this testimony may technically be hearsay. However, pursuant to Federal Rule of Evidence 104, the Court must decide any preliminary question about whether a privilege exists, and in so deciding the Court is not bound by evidence rules.

**MEMORANDUM DECISION AND ORDER - 14**

meet in isolation as they had been mistakenly allowed to do previously. *Blades Aff.*, ¶ 20, Dkt. 499-6.

Still, Wood persists on alleging that he has somehow been legally wronged by IDOC's decision to prevent him from meeting with Ms. McKenzie. And Ms. McKenzie continues to push the envelope by contacting the Court's staff via email or filing documents with the Court on her own behalf. Under these circumstances, the Court finds that IDOC has simply followed reasonable security measures by separating Wood and Ms. McKenzie. Accordingly, Wood has not demonstrated good cause for the Court to issue a protective order.

### 4.    *In Camera* Documents

Finally, at the last status conference in this case, Wood suggested that IDOC has confiscated documents or legal papers from him which are relevant to this case, making it impossible for him to prosecute his case. Counsel for the defendant, on behalf of IDOC, responded that the only documents, if any, taken from Wood were confiscated for security purposes, and were not relevant to the merits of this case.

The Court ordered IDOC to provide the Court with all material confiscated or withheld from Wood so it could review them and make a determination regarding Wood's allegations. IDOC complied. (Dkt. 504). The Court has now reviewed those documents and concluded that they are, in fact, irrelevant to the merits of this case.

# ORDER

**IT IS ORDERED THAT:**

1.     Plaintiff's Motion for Contempt Hearing (Dkt. 464) is **DENIED**.

2.     Plaintiff's Motion for Protective Order (Dkt. 468) is **DENIED**.

3.     Plaintiff's Motion for Appointment of Counsel (Dkt. 505) is **DENIED**.

4.     Plaintiff's Motion for Emergency Protective Order (Dkt. 506) is **DENIED**.

DATED: April 8, 2013

B. Lynn Winmill
Chief Judge
United States District Court